S. B. STOUGH ET AL., APPELLANTS, V. PONCA MILL COMPANY, DEFENDANT, AND S. P. MIKESELL, INTERVENER AND APPELLEE.

FILED APRIL 8, 1898. No. 7962.

1. **Insolvent Corporations: Assets.** The assets of an insolvent corporation constitute a trust fund in the hands of its directors to be used by them in paying corporate debts.

2. ————: Mortgages. A mortgage executed by an insolvent corporation to secure a debt due from it to one of its officers or directors is illegal and void.

3. ————: ————. So also is a mortgage executed to a third person to secure a debt for the payment of which one of its officers or directors is personally bound.

4. **Corporations: Purchaser of Note: Notice of Fraud: Principal and Agent.** One who buys a corporation note unlawfully issued is not an innocent purchaser where it appears on the face of the note that the payee therein named and the officer by whom it was executed is the same person.

5. ————: Loan to Stockholders. Where money is borrowed by stockholders of a corporation for its benefit, and actually used in its business, the corporation is legally liable for the repayment of such money.

APPEAL from the district court of Dixon county. Heard below before ROBINSON, J.   *Affirmed.*

*Gantt & Welty,* for appellants.

*A. E. Barnes* and *J. J. McCarthy, contra.*

SULLIVAN, J.

S. B. Stough, L. E. Baltzley, William Sheffel, and Peter Sheffel commenced this action in the district court of Dakota county to foreclose a mortgage executed to their assignor, S. K. Bittenbender, by the Ponca Mill Company on July 11, 1894. The mill company was a corporation engaged in the grain and milling business at Ponca from the latter part of 1886 until February 3, 1893, at which time, its mill and elevator being destroyed by fire, it ceased to do business. The mortgage in suit covered the entire property of the company and was given, pursuant to a resolution adopted by the board of directors, to secure the payment of four promissory notes for the aggregate sum of $3,400. Each of the plaintiffs is the assignee and owner of one of these notes and all joined in this action to foreclose the mortgage. The corporation was duly served with summons, but did not answer or otherwise appear in the case. On his application, and without objection on the part of the plaintiffs, S. P. Mikesell, a creditor and stockholder of the corporation, was permitted to intervene. In his answer to the petition Mikesell alleged that the mill company was insolvent on July 11, 1894, that there was no consideration for the mortgage, that it was executed by John Stough as president and S. K. Bittenbender as secretary of the corporation for the purpose of defrauding the creditors and stockholders, and that the plaintiffs were not *bona fide* purchasers of said notes. The trial in the district court resulted in favor of the intervener. There was a decree canceling the notes and mortgage and the plaintiffs have appealed the cause to this court.

. Plaintiffs first insist that the insolvency of the corporation is not established by the evidence. The trial court found that the value of the assets of the mill company was $4,500 and its liabilities $8,500. This latter sum included an item of $6,000 borrowed from one W. L. Ogden by Mikesell and two other stockholders for the benefit of the company and which was actually used in its business. Plaintiffs argue that the company was not directly liable to Ogden for this sum and therefore it should not be counted as a liability. But we think it should. The company received the money and was under a legal obligation to repay it either to Mr. Ogden or to the stockholders on whose credit it was obtained. The finding of the district court that the corporation was insolvent when the mortgage to Bittenbender was executed is fully sustained by the evidence, and no other conclusion could be justified. The corporation being insolvent, the mortgage to Bittenbender cannot be upheld. He was secretary of the company and one of its directors. He and Stough, as directors, voted for the resolution authorizing the mortgage, and he and Stough, as officers of the corporation, executed the mortgage. According to Bittenbender's own evidence the mortgage was given to him in order to raise money to pay certain items of indebtedness, among which was a claim to himself of $1,600 for services, a claim of $445 to the Security Bank for which he was personally liable, and a claim of $330 to John Stough for services. The wisdom of the rule which forbids one from dealing with himself while acting as the agent of another is strikingly illustrated in this case. By the execution of the mortgage here in question the president and secretary of the mill company attempted to pay themselves nearly $2,000 for services alleged to have been rendered after the company had entirely ceased to transact business. The finding of the district court that the mortgage was authorized and executed for the purpose of defrauding creditors and stockholders of the corporation has ample evidence to

support it. Indeed, the transaction was so manifestly fraudulent that a different conclusion could not be approved. But if the corporation had been actually indebted to Bittenbender and Stough for services, they could not be permitted to give preference to their own claims. The corporation being insolvent and having ceased to prosecute the business for which it was created, its assets became a trust fund in the hands of its directors to be used by them in paying the corporate creditors. (Taylor, Private Corporations, sec. 668; *Beach v. Miller*, 130 Ill. 162; *Haywood v. Lincoln Lumber Co.*, 64 Wis. 639; *Lyon-Thomas Hardware Co. v. Perry Stove Mfg. Co.*, 88 Tex. 468; *Hill v. Pioneer Lumber Co.*, 113 N. Car. 173.) That a mortgage executed by an insolvent corporation to one of its own directors is invalid was decided by this court in *Ingwersen v. Edgecombe*, 42 Neb. 740; and in *Tillson v. Downing*, 45 Neb. 549, it was held that a mortgage given by an insolvent corporation to secure a debt for which its directors are personally bound is likewise void. It follows, therefore, that Bittenbender could not enforce the mortgage. The plaintiffs, however, insist that they are in a better position, having, as they claim, purchased the notes in question before maturity for full value and without notice of antecedent equities. This contention cannot be sustained. They were not innocent purchasers because the notes on their face showed that they were executed by Bittenbender, as an officer of the corporation, to himself. This fact made it the duty of the plaintiffs to inquire and ascertain whether the paper was lawfully issued. (*Third Nat. Bank v. Marine Lumber Co.*, 44 Minn. 65, 46 N. W. Rep. 145.) Besides the district court found—and its finding is fully warranted by the evidence —that the plaintiffs had actual knowledge that the notes and mortgage were executed without consideration and for the purpose of cheating and defrauding the creditors and stockholders of the corporation. There is no error in the record. The judgment of the district court is right and is

AFFIRMED.